# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **LINDSY WILLIAMSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 12-1117-JWL** |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability(SSD) benefits and Supplemental Security income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI benefits on August 18, 2009, alleging disability beginning July 1, 2003.  (R. 8, 145-49).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 8, 48-51, 76-77).  Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ Michael D. Schilling on December 9, 2010.  (R. 8, 27-47).  ALJ Schilling issued a decision on January 27, 2011 finding that Plaintiff has severe mental impairments including affective disorder, substance abuse disorder, and borderline personality disorder, but that the severity of her impairments does not meet or equal the severity of any impairment in the Listing of Impairments.  (R. 8-12).  He determined that Plaintiff has the residual functional capacity (RFC) to perform a range of work at all exertional levels restricted by significant limitations due to her mental impairments, and that she has no past relevant work as defined in the Act.  (R. 12-18).  Nevertheless, he determined that based on Plaintiff's age, education, work experience, and RFC a significant number of jobs exist in the national economy that she can perform.  (R. 18-19).  Consequently, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications for benefits.  (R. 19).  Plaintiff sought Appeals Council review (R. 139-43), but the Council found no reason under the rules of the Social Security Administration to review the ALJ's decision, and denied the request for review.  (R. 1-4).  Therefore, the ALJ's decision became the final decision of the Commissioner; (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it

constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if she can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084.  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2010);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she

---

[2]Because the Commissioner's decision was issued on January 11, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of her past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's RFC. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff presents three allegations of error, each focusing on a different medical opinion in the record. She argues that the ALJ did not properly consider the medical opinion of her treating psychiatrist, Dr. Shah; that he did not include sufficient limitations in assessing Plaintiff's RFC because he failed to accord sufficient weight to the opinion of Dr. Shah and to the opinion of a non-treating psychologist, Dr. Kovach; and that he erroneously accorded significant weight to the opinion of a state agency psychologist

which opinion was not adequately supported by record evidence. The Commissioner argues that the ALJ properly evaluated each of the medical opinions in accordance with the regulations and with Tenth Circuit precedent. The court addresses each issue in the order presented in Plaintiff's Brief and finds no error in the ALJ's evaluation of the medical opinions.

## IV. Evaluation of the Medical Opinions

The Commissioner accorded "little weight" to the treating source opinion of Dr. Shah, and "significant weight" to both the non-treating source opinion of Dr. Kovach and the non-examining source opinion of the state agency psychologist, Dr. Schulman. (R. 16-17, 18). Plaintiff claims that Dr. Shah's treating source opinion should have been given controlling weight, that the ALJ failed to address the regulatory factors for weighing a treating source opinion as presented in <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003), and that the reasons given for discounting Dr. Shah's opinion are not legitimate. She claims that the ALJ failed to include sufficient mental limitations in his RFC assessment because he ignored certain limitations contained in the non-treating source opinion of Dr. Kovach and "picked and chose" those portions of Dr. Kovach's report which were favorable to a finding of "not disabled" despite purporting to accord "significant weight" to Dr. Kovach's opinion. Finally, she claims that the ALJ actually took the RFC limitations he ultimately assessed directly from the report of the non-examining source, Dr. Schulman, but that Dr. Schulman's report does not find adequate support in the record evidence.

## A.    Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012).  A physician who has treated a patient frequently over an extended period of time (a treating source)[3] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However,

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [she] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions"). The threshold to deny controlling weight is low. SSR 96-2p explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Supreme Court in Perales, 402 U.S. at 401(substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2012). To deny controlling weight, the ALJ need only find other evidence in the record which is "such relevant evidence as a reasonable mind would

accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source] medical opinion." Id.

The Tenth Circuit has explained the nature of the inquiry regarding a treating source medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with the other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)). The other medical opinions in the record must also be weighed in accordance with the regulatory factors. 20 C.F.R. §§ 404.1527(d), 416.927(d) ("we consider all of the [regulatory] factors in deciding the weight we give any medical opinion.").

## B.      Dr. Shah's Opinion

Dr. Shah provided a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" (MSSM or MSS) in which she opined that Plaintiff has "slight" restrictions in 4 of 24 listed mental abilities, "moderate" restrictions in 4 mental abilities, "marked" restrictions in 12 mental abilities, and "extreme" restrictions in 4 mental abilities. (R. 653-60). She diagnosed Plaintiff with Bipolar Disorder, assessed Global Assessment of Functioning (GAF)[4] Scores of 45, and despite the serious nature of the

---

[4]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 34. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).
GAF scores in the range of 41-50 indicate "**Serious symptoms** (e.g., suicidal

mental restrictions reported, stated that Plaintiff is able to manage benefits on her own

behalf.  If accorded controlling weight, this opinion would clearly compel a finding of

"disabled."

The ALJ recognized and summarized Dr. Shah's opinion.  (R. 16).  He then

provided at least twelve reasons explaining why he discounted Dr. Shah's opinion and

why he accorded it "little weight:"

> These limitations opined by Dr. Shah are considered, but the limitations
> [(1)] are not supported by the medical evidence in the record, [(2)] or by the
> claimant's treatment records.  The claimant, through her own admission,
> [(3)] has repeatedly not followed through with treatment in the past.  The
> [(4)] GAF provided by Dr. Shah is not consistent with others found in the
> medical record, which are somewhat higher.  Additionally, as noted by the
> claimant and her mother, the [(5)] claimant has relatively normal ADL's,
> and apparently has the [(6)] ability to go out into the community with little
> to no problems.  When Dr. Shah saw the claimant on April 9, 2010, less
> than two weeks before submitting this statement, Dr. Shah noted the
> claimant reported her [(7)] medication was helping her mood and anxiety,
> and that the [(8)] claimant was calmer and reported improved self-control of
> her emotions (Ex. 12F/2 [(R. 613)]).  In addition, Dr. Shah opined at that
> time that the [(9)] claimant's mood was stable and she was showing
> improvement.  Additionally, as noted above, [(10)] Dr. Kovach opined the
> claimant had adequate abilities for simple jobs, although the claimant's
> concentration and attention is variable at times.  One last note is the
> claimant's statement to Dr. Kovach during the consultative exam, indicating
> that she was currently working as a stripper.  It is [(11)] unclear as to
> whether Dr. Shah knew this information, but that admission to Dr. Kovach
> indicates the claimant's ability to engage in some type of work activity,
> regardless of her impairment.  As a result, little weight is given to these
> opinions of Dr. Shah.  It is also noted that the [(12)] claimant gets no mental
> health therapy, only seeing the doctor a[t] Valeo [(Dr. Shah)] for

---

ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in
social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."
DSM-IV-TR, at 34 (emphases in original).

medications every three months.  This is [a] strong indicator that her condition is not as severe as she alleges or Dr. Shah has assessed.  If she were as extreme as reflected in the MSS it would be reasonable to anticipate that she would be in intensive therapy on a much more frequent basis, if not in in-patient treatment.

(R. 16-17) (numbering added for ease in identifying reasons for discounting the opinion).

To the extent Plaintiff asserts Dr. Shah's opinion should have been accorded controlling weight, the twelve reasons quoted above, given by the ALJ to discount Dr. Shah's opinion constitute "other substantial evidence in [claimant's] case record" with which Dr. Shah's opinion is inconsistent.  They are "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in [Dr. Shah's] medical opinion," and as such constitute "substantial evidence" justifying the denial of controlling weight to Dr. Shah's opinion.

Plaintiff points out that Dr. Shah treated her for almost two years before the administrative hearing and almost a year and a half before providing her written opinion in this case.  She then argues that the ALJ failed to address the regulatory factors enumerated in Watkins for weighing treating source opinions.  Plaintiff's argument ignores the ALJ's explanation.  Each of the twelve reasons given by the ALJ to discount Dr. Shah's opinion relates to one or more of the regulatory factors 3, 4, and 6--the degree to which the physician's opinion is supported by relevant evidence, the consistency between the opinion and the record as a whole, and other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Plaintiff's argument that the ALJ "failed to consider . . . the degree to which Dr. Shah's opinion was supported by

relevant evidence, [and] the consistency of Dr. Shah's opinion with the record as a whole" (Pl. Br. 12), simply cannot be squared with the ALJ's discussion quoted above.

Plaintiff also argues that the ALJ did not "consider the length of the treating relationship between Dr. Shah and Williamson, . . . and Dr. Shah's area of specialty." (Pl. Br. 12). Although the ALJ did not state that Dr. Shah was a psychiatrist or that she was Plaintiff's treating physician, the decision reveals that he was aware that she was a treating psychiatrist because he addressed Dr. Shah as "Pir Shah, M.D.," thus indicating she was a medical doctor rather than a psychologist. The only impairments at issue in this case are mental impairments and the ALJ recognized that Dr. Shah was treating Plaintiff for her mental impairments. Moreover, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). In the circumstances, the decision makes clear that the ALJ was aware that Dr. Shah was Plaintiff's treating psychiatrist, and that she was treating Plaintiff for medication management only, not in therapy. Plaintiff has not show error in the ALJ's evaluation of the regulatory factors.

Plaintiff admits that Dr. Shah consistently assessed GAF scores of 50 in her treatment records, and that she assessed GAF scores of 45 in her Medical Source Statement. (Pl. Br. 11). But, she then argues that the GAF scores in the Medical Source Statement are consistent with the GAF scores Dr. Shah assigned in the treatment notes.

To be sure, GAF scores of 45 and of 50 are within the same range of scores identified in the Global Assessment of Functioning Scale presented at page 34 in the DSM-IV-TR. However, as Plaintiff admits, on <u>every</u> occasion at which she assigned a GAF score in her treatment notes (including the last time she saw Plaintiff before she completed her Medical Source Statement, and thereafter in her last recorded office visit), Dr. Shah assigned a score of 50.  (R. 547-760, <u>passim</u>); <u>see also</u> (R. 613-14) (dated 04/09/2010); (R. 758-60) (dated 10/14/2010).  Moreover, as Plaintiff tacitly admits, and as the ALJ noted, Dr. Shah assigned GAF scores five points lower in her Medical Source Statement than she assigned in <u>any</u> treatment record.  (R. 654); <u>see also</u> (Pl. Br. 12) ("Dr. Shah opined in his MSSM that Williamson had a GAF score of 45").  The ALJ noted that the GAF scores assigned by Dr. Shah in the Medical Source Statement were not consistent with those assigned in her medical records, which, at 50, "were somewhat higher."  (R. 16).  Although both scores are within the same general GAF range, the ALJ is correct that the score universally assigned by Dr. Shah in her treatment records (50) is "somewhat higher," and to that extent, inconsistent with, the scores of 45 assigned by her in the Medical Source Statement.  In context, given the deference due to the agency's decision, and considered in light of at least eleven other reasons given by the ALJ to discount Dr. Shah's opinion, that inconsistency is one more reason tending to support the ALJ's determination to discount Dr. Shah's opinion.

The eleventh reason given to discount Dr. Shah's opinion was that it was unclear whether Dr. Shah was aware that Plaintiff was concurrently working--information which

suggests the ability to engage in some type of work activity. (R. 16). Plaintiff focuses on the ALJ's statement that Plaintiff was "working <u>as a stripper</u>," and argues that there is no indication that Plaintiff was working at substantial gainful activity, and that the "knowledge [of work as a stripper] is not material to Dr. Shah's opinion on Williamson's mental limitations and only acts to show bias on the part of the ALJ." (Pl. Br. 13) (quoting (R. 16)) (emphasis supplied by the court). If the ALJ had found that Plaintiff was working at the level of substantial gainful activity, he would have denied her claims at the first step of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). That is not the significance of his finding at this point in the decision. The significance of work as a stripper, in context, is that such work likely requires interaction with co-workers and with the public, and the further significance of reason eleven is that if Dr. Shah had known that Plaintiff was performing such work, she may not have assessed such severe limitations as she did. This is a reasonable consideration, and supports the ALJ's determination to discount Dr. Shah's opinion.

Plaintiff accuses the ALJ of bias for including in his decision that Plaintiff was working as a stripper, but she provides no explanation of how that fact demonstrates bias. As noted above, the fact that Plaintiff was working is relevant to the ALJ's evaluation of reason eleven, and the fact that the work was as a stripper is also relevant to that analysis. It was Dr. Kovach who recorded Plaintiff's report that she had recently been working as a stripper (R. 616), and Plaintiff herself reported that she worked as a dancer at "nightclubs in area" between 2003 and 2005 (R. 195), and that she worked as a stripper from 2002 to

2005. (R. 314). The significance of interaction with the public in work as a stripper is heightened in these circumstances, since Plaintiff reported that such work was "self-employed" (R. 195, 314), and that she was "paid on tips only-no hourly wages." (R. 211, 230). Counsel is cautioned not to cast aspersions on a tribunal without a proper basis for doing so. Plaintiff has shown no error in the ALJ's evaluation of Dr. Shah's opinion.

### C.    Dr. Kovach's Opinion

Dr. Kovach provided a Psychological Test Report on Plaintiff at the request of the state Disability Determination Service based upon a client examination, psychological testing, and a review of some of Dr. Shah's treatment notes. (R. 616-29). She diagnosed Plaintiff with bipolar disorder, and borderline personality disorder with antisocial personality features, nicotine dependence, and a history of alcohol and cocaine dependence, both reportedly in remission. (R. 622). She assessed a GAF score of 45-50. Id. She summarized Plaintiff's "Ability to Work:"

> The client has adequate cognitive abilities for simple jobs, but attention and concentration are variable, meaning that she is likely to be unreliable in fulfilling work requirements. Working memory is normal, but overall her auditory memory is significantly better than her visual memory. Eye-hand coordination tends to be slow. Motivation to work appears poor, and her work history suggests poor reliability and consistency. Ability to get along with others in the work place is likely poor due to little tolerance for even ordinary stress of daily life, irritability, easily aroused anger, and explosive behaviors that may include physical aggression.

(R. 622).

In his step three evaluation of Plaintiff's mental functioning, the ALJ specifically noted Dr. Kovach's statements that Plaintiff socially isolated herself, tends to blame

others for her failures and her problems, that she has a low tolerance for ordinary adult demands, is irritable, and has a quick temper, that Plaintiff's attention and concentration is variable, that her motivation varied during the doctor's examination, and that her IQ of 85 was within the low average range. (R. 11). The ALJ also summarized Dr. Kovach's report, noting a history of drug and alcohol abuse since age seven, an extensive criminal history resulting in multiple incarcerations for short periods of time. (R. 15). He noted Dr. Kovach's report of Plaintiff's extensive daily activities, that Plaintiff was asked to attend group therapy at Valeo but did not want to, that she tended to blame others for her problems, and that she expressed no feelings about her [absent] children. (R. 16). He summarized Dr. Kovach's opinion and the weight to which he accorded it:

> Dr. Kovach opined the claimant had adequate cognitive abilities for simple jobs, but her attention and concentration are variable. Dr. Kovach indicated the claimant's working memory was normal. Dr. Kovach did note the claimant's motivation to work was poor, as was the claimant's ability to get along with others in the workplace due to intolerance for even ordinary stress (Ex. 13F/7 [(R. 622)]). The opinions of Dr. Kovach are given significant weight in this decision.

(R. 16). As quoted earlier in this Memorandum and Order in relation to the ALJ's evaluation of Dr. Shah's opinion, the ALJ phrased Dr. Kovach's opinion slightly differently: "the claimant had adequate abilities for simple jobs, although the claimant's attention and concentration is variable at times." Id. (quoted supra, at 11).

Plaintiff points to Dr. Kovach's assessment of a GAF score of 45-50, argues that it is "precisely the range opined by Dr. Shah," and is therefore consistent with Dr. Shah's opinion and "consistent with the record as a whole which is littered with suicide attempts

17

and hospitalizations." (Pl. Br. 13). She also argues that the "ALJ omitted the portion of Dr. Kovach's summary which stated that Williamson was likely to be unreliable in fulfilling work requirements," and she suggests that this fact constitutes "picking and choosing" from Dr. Kovach's opinion, and is contrary to the ALJ's statement that he accorded "significant weight" to Dr. Shah's opinion, because "had the ALJ truly given significant weight to Dr. Kovach's opinion as a whole, the result would have been a finding of disability." (Pl. Br. 14-15). She also asserts that the ALJ ignored Dr. Kovach's opinion that Plaintiff is unable to tolerate even normal stress. Id. at 15.

As quoted above, the ALJ did not ignore, but in fact recognized, Dr. Kovach's opinion that Plaintiff has an "intolerance for even ordinary stress." (R. 16). Therefore, at least that portion of Dr. Kovach's opinion was not ignored as Plaintiff asserts. But, as Plaintiff suggests, the ALJ did not repeat Dr. Kovach's statement that Plaintiff "is likely to be unreliable in fulfilling work requirements." (R. 622). The court finds this is not error. Dr. Kovach's entire statement at issue was, "The client has adequate cognitive abilities for simple jobs, but attention and concentration are variable, meaning that she is likely to be unreliable in fulfilling work requirements." Id. The decision reveals that the ALJ acknowledged this statement twice. In considering whether Plaintiff's condition meets or equals a Listing at step three, the ALJ discussed Plaintiff's ability to maintain concentration, persistence, or pace, and stated, "Dr. Kovach noted the claimant's attention and concentration during the consultative exam as variable." (R. 11). Later, in summarizing Dr. Kovach's opinion, the ALJ stated, "Dr. Kovach opined the claimant had

adequate cognitive abilities for simple jobs, but her attention and concentration are variable." (R. 16).

Despite the ALJ's consideration as noted above, Plaintiff focuses on the ALJ's "failure" to state Dr. Kovach's opinion that variable attention and concentration means that Plaintiff is likely to be unreliable in fulfilling work requirements. She then equates unreliability in fulfilling work requirements with an inability to work, and argues that "had the ALJ truly given significant weight to Dr. Kovach's opinion as a whole, the result would have been a finding of disability." (Pl. Br. 15). The court cannot agree. Dr. Kovach opined that variable attention and concentration make Plaintiff unreliable in fulfilling requirements of work, she did not opined that it precludes work. In fact, Plaintiff's argument ignores Dr. Kovach's expressed opinion that Plaintiff "has adequate cognitive abilities for simple jobs." (R. 622). The ALJ acknowledged Plaintiff's variable attention and concentration and accounted for it by noting that she is "limited to jobs that do not demand attention to details or complicated job tasks." (R. 12). The fact that Plaintiff disagrees with the ALJ's finding is immaterial. The question is whether the ALJ's findings are supported by substantial record evidence, and the court may not reweigh the evidence and substitute its judgment for that of the Commissioner. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

Plaintiff claims Dr. Kovach's GAF score of 45-50 "was arrived at through the results of objective testing" and is consistent with Dr. Shah's opinion and with "the record as a whole which is littered with suicide attempts and hospitalizations" (Pl. Br.

13), and that the ALJ erred in failing to address it. As noted above in footnote 4, a GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." DSM-IV-TR 32. Although the objective testing administered by Dr. Kovach no doubt informed her judgment regarding the GAF score she assigned, it is clear that a GAF score is not the result of objective testing. Moreover, although both Dr. Shah and Dr. Kovach provided GAF scores which are within the same range of "serious symptoms," or "serious impairments," there is simply no means to determine that the two clinicians' judgment regarding Plaintiff's overall level of functioning are consistent based merely on the GAF scores assigned. Both doctors assigned a GAF score without specific explanation of how the particular score was reached. Compare (R. 622) with (R. 654). Although Dr. Shah provided a limited narrative discussion in her Medical Source Statement (R. 654, 656-59) and Dr. Kovach provided substantial narrative discussion in her report (R. 616-22), neither doctor specifically explain the manner in which she arrived at the GAF score assigned. The ALJ found significant differences in the opinions and the limitations assessed by the two doctors, and as the discussion herein demonstrates, the court finds substantial record evidence supports those findings. As to Plaintiff's allegation that the GAF scores are supported by the record which is "littered with suicide attempts and hospitalizations," that appears to be counsel's lay appraisal of the situation. Neither doctor said anything in her report regarding such suicide attempts or hospitalizations being a basis for her GAF score. Moreover, Dr. Shah left blank the checkbox regarding "Suicide ideation or attempts" in

her Medical Source Statement (R. 655), and Dr. Kovach specifically noted that Plaintiff had no suicidal or homicidal ideation. (R. 617). The court finds no error in the ALJ's evaluation of Dr. Kovach's opinion, or in his determination to accord significant weight to the opinion.

### D.    Dr. Schulman's Opinion

On April 19, 2010 at the reconsideration level, and after reviewing the record evidence including Dr. Kovach's report of examination, Dr. Schulman completed a Psychiatric Review Technique form (PRTF) opining that Plaintiff has bipolar affective disorder, borderline personality disorder, and alcohol and cocaine dependence which are in reported remission, and that all of those impairments are severe within the meaning of the Act. (R. 634-47). At the same time, Dr. Schulman completed a Mental RFC Assessment form, opining that Plaintiff's mental impairments result in moderate limitations in only five of twenty functional areas--the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to interact appropriately with the general public. (R. 648-52). The ALJ stated he accorded significant weight to Dr. Schulman's opinion because it was consistent with the medical evidence as a whole and with other medical opinions in the record. (R. 18).

Plaintiff argues that, "Despite the limitations opined by Dr. Kovach that Williamson would have difficulty with attention and concentration as well as stress

caused from ordinary daily life, Dr. Schulman opined that Williamson had only moderate limitations." (Pl. Br. 19-20). She acknowledged that Dr. Schulman did address Dr. Kovach's examination, but argues that he "completely failed to address Dr. Kovach's GAF assessment of 45-50, and her statement that Williamson would be unreliable in fulfilling work requirements and unlikely to tolerate even ordinary stress of daily life." (Pl. Br. 20). Citing Lee v. Barnhart, 117. F. App'x 674, 678 (10th Cir. 2004), she argues that when an ALJ "relies heavily upon a Psychiatric Review Technique (PRT) [form], the opinions [in the PRTF] themselves must find adequate support in the medical record." (Pl. Br. 18).

As Plaintiff admits, in Lee the ALJ relied "wholesale" on a PRTF completed by an agency medical consultant. Id. Therefore, and because the medical consultant's opinion was not adequately supported by record evidence, the case was remanded for proper consideration of the consultant's opinion. Lee, 117 F. App'x at 678. Here, as discussed above, the ALJ properly evaluated and properly accorded significant weight to Dr. Kovach's opinion. Consequently, it is clear that contrary to Plaintiff's assertion the ALJ did not rely wholesale on Dr. Schulman's opinion. Moreover, because the record evidence supports the ALJ's understanding of Dr. Kovach's opinion, that same evidence supports the ALJ's understanding of Dr. Schulman's opinion.

Because Plaintiff has not shown that the ALJ erred in his evaluation of any of the medical opinions, she cannot show that the RFC limitations assessed based upon that

evaluation of the medical opinions is erroneous.  Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 12th  day of June 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**